# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| **SUELLEN KLOSSNER,**<br>Plaintiff, | No. 2:20-cv-01037 |
| vs. | |
| **IADU TABLE MOUND MHP, LLC,**<br>**RV HORIZONS, INC., AND**<br>**IMPACT MHC MANAGEMENT, LLC,**<br>Defendants. | **COMPLAINT FOR PRELIMINARY AND**<br>**PERMANENT INJUNCTIVE RELIEF,**<br>**DAMAGES AND JURY DEMAND** |

## PARTIES, JURISDICTION & VENUE

1.     Plaintiff Suellen Klossner ("Ms. Klossner") was at all relevant times a resident of Dubuque County, Iowa.

2.     According to the Iowa Secretary of State website, Defendant IADU Table Mound MHP, LLC is a foreign limited liability company with a home office located at 110 NW 2nd Street, Cedaredge, Colorado 81413.

3.     According to the Articles of Organization filed on the Colorado Secretary of State website on May 2, 2017, IADU Table Mound MHP, LLC was managed by RV Horizons, Inc., a foreign limited liability company that also has a home office located at 110 NW 2nd Street, Cedaredge, Colorado 81413.

4.     According to the Periodic Report filed on the Colorado Secretary of State website, the registered agent for IADU Table Mound MHP, LLC changed from RV Horizons, Inc. to Impact MHC Management, LLC on April 20, 2019.

1

5.    According to the Wyoming Secretary of State website, Impact MHC Management,
      LLC is a limited liability company with a home office located at 1712 Pioneer Ave.,
      Ste. 500, Cheyenne, Wyoming 82001.

6.    According to the Iowa Secretary of State website, Impact MHC Management, LLC
      operates under the trade name "Impact Communities" in Iowa.

7.    Defendant IADU Table Mound MHP, LLC owns and operates the mobile home park
      where Plaintiff resides, also commonly known as Table Mound. Defendant IADU
      Table Mound MHP, LLC is controlled by Impact MHC Management, LLC. At all
      relevant times these Defendants were responsible for approving requests for
      reasonable accommodations.

8.    The illegal acts and discriminatory housing practices that give rise to this lawsuit
      occurred in Dubuque County, Iowa.

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343
      and 42 U.S.C. § 3613. Appropriate declaratory relief is authorized by 28 U.S.C. §§
      2201 and 2202. The Court has supplemental jurisdiction over Ms. Klossner's state
      law claims under 38 U.S.C. § 1367.

10.   Venue is proper in the Northern District of Iowa because the events giving rise to this
      action occurred in this judicial district.

**GENERAL ALLEGATIONS**

11.   Table Mound was constructed in 1963 and is located on the southern edge of
      Dubuque, Iowa. With 525 lots, it is the largest mobile home park in Dubuque.

2

12. In 2009, Ms. Klossner purchased a 1977 Trail-A-Rod double-wide manufactured home situated at 2530 Anamosa Drive in Table Mound for $28,000. Ms. Klossner owns her home free and clear of any liens or encumbrances.

13. The term "mobile home" is a misnomer. Most homes cannot be moved quickly or at all because of the age or condition of the home or the expense involved.

14. In cases where relocating a mobile home is structurally possible, moving is very expensive and beyond the financial capacity of most low-income people. First, the home must be disconnected from all utility lines. External structures like carports and decks must be removed, and the home must be prepared for moving. Then, the home has to be raised up from its foundation and mounted on wheels or placed on the back of a truck. All of these things must then be done in reverse when the home reaches its new lot. The moving process requires special equipment, and generally must be completed by trained workers. The minimum cost of moving a double-wide manufactured home is more than $10,000. Paul Luciano et. al., *Report on the Viability and Disaster Resilience of Mobile Home Ownership and Parks*, Vt. Dep't of Hous. and Cmty. Dev., p. 26 (2013) *available at* http://www.leg.state.vt.us/reports/2013externalreports/295178.pdf.

15. Even if a mobile home resident can afford these costs, which may be more than the home itself is worth, many older homes are unsafe to move. Additionally, many parks will not accept older mobile homes. Mobile home parks have different rules for determining when a mobile home is too old to accept, but homes older than ten years are commonly rejected from mobile home parks.

16.     As a result, many mobile home tenants are not able to bargain with their landlord over rent increases or fees because the tenant does not have any alternative other than to abandon their home. In the words of Frank Rolfe, one of the principals of RV Horizons and Impact Communities, owning a manufactured housing park is "like owning a Waffle House where the customers are chained to the booths[.]" Karl Vick, *The Home of the Future*, TIME MAGAZINE (March 23, 2017) (available at https://time.com/4710619/the-home-of-the-future/). Like most other mobile home park tenants, it is not an option for Ms. Klossner to move her mobile home.

17.     Ms. Klossner, who is 60 years old, is a person with disabilities. She has been diagnosed with Bipolar I and Post-Traumatic Stress Disorder ("PTSD"). In addition to these psychiatric disabilities, Ms. Klossner also has numerous significant physical disabilities such as migraine headaches, neuropathy, chronic obstructive pulmonary disease ("COPD"), and fibromyalgia. Ms. Klossner is currently receiving medical treatment for the foregoing disabilities.

18.     Ms. Klossner's disabilities prevent her from working. In 1993, the Social Security Administration determined that Ms. Klossner was unable to work due to a combination of her mental and physical impairments.

19.     Ms. Klossner lives alone in her home at Table Mound. Her sole income is $364.00 per month in Supplemental Security Income, $427.00 per month in Social Security Disability, and $194.00 in Supplemental Nutrition Assistance Program benefits.

20.     In addition to preventing her from working, Ms. Klossner's disabilities also affect other major activities such as sleeping, eating, breathing, concentrating, thinking and communicating. Ms. Klossner has debilitating migraine headaches at least twice a

4

week. She suffers from extreme sleep deprivation and night terrors. When she is anxious, she has problems overeating or not eating at all. She is agoraphobic. These symptoms worsen when Ms. Klossner perceives that she is losing control.

21. Ms. Klossner's lot rent was $235.00 per month when she first moved to Table Mound in 2009.

22. Ms. Klossner's lot rent increased incrementally from $235.00 in 2009 to $280.00 in 2017.

23. Over 8 years, Ms. Klossner's rent increased by approximately 2% per year.

24. Defendant IADU Table Mound MHP, LLC purchased Table Mound on June 30, 2017. At the time, Ms. Klossner's lot rent was $280.00, with water, sewer and trash pick-up included.

25. Defendant IADU Table Mound MHP, LLC has known Ms. Klossner is a person with disabilities since it acquired Table Mound in 2017.

26. After purchasing Table Mound, Defendant IADU Table Mound MHP, LLC demanded that Ms. Klossner sign a new month-to-month lease, with a term commencing August 1, 2017. The lease was an adhesion contract and Ms. Klossner did not have any opportunity to negotiate. Ms. Klossner signed the lease on August 16, 2017. The lease included the following illegal provisions:

   a. Paragraph 24 of the lease provided that a tenant's right to occupancy shall be terminated on thirty days' written notice of nonrenewal or three days' written notice for a breach of any provision of the lease. This provision violates Iowa Code §§ 562B.10(5) and 562B.25.

b. Paragraph 25 requires Ms. Klossner to waive her right to litigate any claims against Defendant IADU Table Mound MHP, LLC in any court of law other than small claims court in violation of Iowa Code § 562B.11.

c. Paragraph 29 states that Ms. Klossner is permitted to charge a tenant more than the actual cost of their utility usage in violation of Iowa Code § 562B.16(2).

27. The 2017 lease imposed a 14.3% rent increase (from $280.00 to $320.00) after thirty days.

28. The City of Dubuque provides water and wastewater treatment to residents of Table Mound residing within city limits, which includes Ms. Klossner. The water is bulk-metered and charged to the Defendant IADU Table Mound MHP, LLC.

29. In November 2017, Defendant IADU Table Mound MHP, LLC installed water meters on every home in Table Mound.

30. On September 1, 2018, Defendant IADU Table Mound MHP, LLC unilaterally increased Ms. Klossner's lot rent from $320.00 to $345.00 per month. In addition to this rent increase, Defendant IADU Table Mound MHP, LLC began to charge Ms. Klossner for water and sewer usage. Additionally, Defendant IADU Table Mound MHP LLC charged $7.45 per month for trash collection, and $5.00 per month for a "Meter Rental Service Charge."

31. In June 2019, Defendant IADU Table Mound MHP, LLC ordered Ms. Klossner and other residents of Table Mound to sign a 47-page lease agreement.

32. On August 30, 2019, the undersigned sent a letter to Defendant IADU Table Mound MHP, LLC regarding this lease agreement. Specifically, the undersigned noted several illegal provisions in the lease, and requested a detailed explanation of utility

6

rates, including water/sewer and trash collection. None of the named Defendants have ever responded to this letter.

33. The 47-page lease agreement included the following illegal provisions:

   a. Paragraph 6(b) of the Lease Agreement stated that the landlord had 60 days to return a tenant's deposit in violation of Iowa Code § 562B.13(3).

   b. Paragraph 10 of the Lease Agreement permitted the landlord to enter the premises for purposes of cleaning or making repairs. In the event the tenant failed to perform any of their duties under the lease, paragraph 11(e) permitted the landlord to perform such duties on the tenant's behalf, charge the tenant for performance of these duties as "self-help costs" and obtain a possessory lien against the tenant. Paragraph 3(b) of the Community Standards contained a similar provision. These provisions violated Iowa Code § 562B.20.

   c. Paragraph 13 ("Non-Waiver") violated Iowa Code § 562B.28.

   d. Paragraphs 11 and 19 violated Iowa Code §§ 562B.9 and 562B.27A.

   e. Paragraph 17 provided that attorney's fees incurred by the landlord by reason of default "shall constitute Additional Rent to be paid by Resident, payable immediately upon demand" in violation of Iowa Code § 562B.11(1)(b).

34. Ms. Klossner did not sign the lease agreement that was presented to her in June 2019.

35. Effective September 1, 2019, Defendant IADU Table Mound MHP, LLC unilaterally raised Ms. Klossner's lot rent again from $345.00 to $380.00 per month. Defendant also raised the trash collection fee from $7.45 per month to $16.00 per month. Upon information and belief, Defendant IADU Table Mound MHP LLC provided no justification for this increase in the trash collection fee.

7

36. In February 2020, residents of Table Mound, including Ms. Klossner, received a form letter from Mike Willis, district manager for Defendant Impact Communities, directing them to sign another new lease agreement. Residents were encouraged to attend a "lease signing party" on March 2 or March 14. The lease contained all of the same illegal provisions that were in the lease that was sent out six months earlier. The letter stated: "All Leases are due and required to be signed by March 30th, 2020."

37. In addition to the illegal lease provisions outlined in paragraph 33, the "Care of the Home and Homesite" section on page 3 of the "Community Standards" addendum to the new lease provided that:

> "Resident is responsible for inspecting the home and making sure that all systems are properly functioning and there a [sic] no gas or water leaks, electrical problems, or other hazards that could adversely affect the health and safety of the Community. Owner and its employees or agents have no obligation to conduct any such inspections of a Resident's home."

The provision further provided that the "Resident must immediately repair any water leaks in or from pipes or fixtures in, on, or under the Home."

The "Leaks" section on page 3 of the Utilities Addendum provided that:

> "Resident agrees to promptly investigate all suspected leaks and repair actual leaks occurring on or about the Premises. If the Resident refuses to investigate and/or repair suspected or actual leaks after reasonable request by Owner, Resident hereby authorizes Owner and its agents to enter the Premises with at least 24 hours advance written notice to Resident, investigate and repair any suspected leaks, and charge all related costs of the investigation and repair to Resident which Resident agrees to pay as Additional Rent."

These provisions violated Iowa Code § 562B.16.

38. The undersigned communicated with Defendant's counsel, Ryan Haaland, about this lease agreement, who responded that this lease was generated by Defendants Impact Communities and IADU Table Mound MHP, LLC by mistake. Defendant

8

subsequently sent out a new lease agreement, which Ms. Klossner signed and returned, though Defendant has still failed to provide any justification for the increased charge for trash collection in 2019.

39. Ms. Klossner pays Defendant IADU Table Mound MHP, LLC approximately $55.00 per month for water, sewer, and trash collection. The total cost of her housing and utilities have increased approximately 87% since Defendant acquired Table Mound in 2017.

40. Since Defendant IADU Table Mound MHP, LLC acquired Table Mound in 2017, Ms. Klossner's rent and utilities as a share of her income have increased from approximately 30% in 2017 to more than 50% today.

41. Upon information and belief, Defendant IADU Table Mound MHP, LLC has billed Ms. Klossner for water and sewer service and trash collection in excess of the actual cost it incurred in providing her with these goods and services.

42. In November 2019, Ms. Klossner had a plumbing issue in her bathroom. Due to the cost of these repairs, Ms. Klossner could not afford her rent and utility bills. In February 2020, Ms. Klossner obtained $300.00 in rental assistance from St. Vincent De Paul Society to help with her rent.

43. Ms. Klossner's rent and utility payments to Defendant IADU Table Mound MHP, LLC are current and up to date as of the date of filing this Complaint, although meeting this obligation consistently creates great hardship.

44. The housing choice voucher program is a federal program that provides rental assistance to ensure very low-income families, persons with disabilities, and seniors can afford safe, decent housing. 42 U.S.C. § 1437f. Under this program, participants

9

pay 30% of their adjusted gross income towards rent and utilities. The remainder of the rent is paid directly to the participant's landlord by the housing choice voucher.

45. Although the housing choice voucher program is federally funded, it is administered by the local housing authority. The housing choice voucher program in Dubuque is administered by the City of Dubuque Housing Authority (DHA).

46. On November 4, 2019, after hearing from residents and community advocates about the dramatic rent hikes that had been imposed on the residents of Table Mound, the Dubuque City Council unanimously approved a measure allowing DHA to issue vouchers to manufactured home park residents.

47. Plaintiff applied for and was approved for a housing choice voucher in January of 2020. If accepted by her landlord, Plaintiff's housing choice voucher would ensure that Ms. Klossner's rent obligation does not exceed 30% of her income. Currently Ms. Klossner's housing choice voucher would pay $333 of her lot rent. The voucher payment may fluctuate in the future if Ms. Klossner's income or rent obligation changes.

48. After she was awarded a housing choice voucher, Ms. Klossner immediately inquired if Defendant IADU Table Mound MHP, LLC would accept it. Ms. Klossner told Defendant Property Manager Stephanie Small that she was disabled, unable to continue to pay the rent without financial assistance, and asked Ms. Small to accept her housing choice voucher. Ms. Small denied Ms. Klossner's request.

49. On February 20, 2020, Ms. Klossner, through counsel, sent Defendant's counsel a letter asking if they would accept Ms. Klossner's housing choice voucher as a reasonable accommodation for Ms. Klossner's disabilities, which prevent her from

10

working. On March 23, Defendant, through counsel, refused Ms. Klossner's request for a reasonable accommodation, stating that it would create an undue administrative burden and fundamentally alter the nature of their housing program. Defendant cited only one specific provision of the housing choice voucher program that it found objectionable. Specifically, Defendant alleged that participation in the program would create an obligation for it to renew Ms. Klossner's lease at the end of her term. In fact, the housing choice voucher program creates no such obligation. While it is true that at one time the program had provided that at the conclusion of a lease term a landlord was not permitted to refuse to renew a lease of a housing choice voucher tenant "except for serious or repeated violation of the terms and conditions of the lease," this provision was repealed in 1996. Pub.L. No. 104-134, § 203(c), 110 Stat., 1321 (1996).

50. On March 17, 2020, the Governor of Iowa proclaimed a State of Public Health Disaster Emergency concerning the Novel Coronavirus 2019 (COVID-19). The Governor's proclamation noted that COVID-19 can be transmitted person-to-person and in some cases may cause severe illness, disability, or death. In an attempt to suppress the spread of COVID-19, the Governor's order mandated the closure of many public accommodations including restaurants, bars, and theaters, and prohibited gatherings of more than ten people. *Available at* https://governor.iowa.gov/sites/default/files/documents/Public%20Health%20Procla mation%20-%202020.03.17.pdf. The Governor subsequently placed a moratorium on most evictions until May 27, 2020. *Available at*

https://www.homelandsecurity.iowa.gov/documents/disasters/Proclamations/2020/PROC_2020_44_COVID-19_April27.pdf

51.     On May 21, 2019, after the COVID-19 pandemic made it almost impossible for Ms.
        Klossner to seek alternative housing, and after discovering that her housing choice
        voucher was not time-limited due to the pandemic, Ms. Klossner's counsel again
        requested a reasonable accommodation from Defendant's counsel. This request was
        also rejected for the same reason. Since receipt of this denial, Ms. Klossner resumed
        her efforts to try and move, but failed again to accomplish this because of her
        disabilities.

52.     Ms. Klossner is not able to move her manufactured home due to the age and condition
        of the home. She has tried unsuccessfully to find a suitable buyer for her home. If Ms.
        Klossner is evicted due to her inability to pay rent she will be homeless. She will lose
        her home, and only asset of any significant value.

53.     One effect of Ms. Klossner's disabilities is that it is very difficult for her to put her
        trust in others. She is agoraphobic and has difficulty being around other people. She is
        unable to seek or find a suitable home.

54.     Due to her age and underlying health conditions, Ms. Klossner is at high risk of
        developing serious complications if she were to become infected with COVID-19.
        The COVID-19 pandemic coupled with uncertainty surrounding Ms. Klossner's
        housing has exacerbated Ms. Klossner's mental health crisis. The Visiting Nurses'
        Association was providing waiver services to assist Ms. Klossner with cleaning and
        maintaining her home. Ms. Klossner canceled these services in March of 2020 for
        fear of becoming infected with COVID-19. Before the COVID-19 pandemic, Ms.

Klossner rarely left her home. She is terrified to do so now. The pandemic has now made Ms. Klossner's housing search impossible for her to manage. As a result, Ms. Klossner is continuously anxious, upset, and unable to sleep.

55.     The ten years Ms. Klossner has lived at Table Mound have been a period of relative calm and stability in Ms. Klossner's life. She is comfortable with her neighbors and loves her home. If she is uprooted and forced to move now – in the middle of a pandemic, no less – the impact on her mental health will be devastating.

**COUNT I:          FAIR HOUSING AMENDMENTS ACT**

56.     The preceding paragraphs are incorporated by reference.

57.     The Fair Housing Amendments Act ("FHAA") prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling…because of a handicap." 42 U.S.C. § 3604(b).

58.     Ms. Klossner's mobile home space is a "dwelling" as defined by the FHAA. 42 U.S.C. § 3602(b).

59.     Discrimination based on "handicap" under the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

60.     To make out a claim of discrimination for failure to reasonably accommodate a person under the FHAA, the plaintiff tenant must establish that she (1) is disabled; (2) that she requested a reasonable accommodation; (3) that the requested accommodation was necessary to afford her an equal opportunity to use and enjoy the

13

dwelling; (4) the landlord refused to make such an accommodation. *Schaw v. Habitat for Humanity of Citrus County, Inc.*, 938 F.3d 1259 (11th Cir., 2019).

61.    The FHAA defines "handicap" as "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 3604(h)(1).

62.    Ms. Klossner is a person with a "handicap" as that term is defined by the FHAA. 42 U.S.C. § 3602(h).

63.    Defendant knew or should have known of Ms. Klossner's handicap.

64.    The FHAA's implementing regulations define "major life activities" to include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and *working*." 24 C.F.R. § 100.201(b) (emphasis added).

65.    Ms. Klossner has impairments that substantially limit her ability to work. As a result of Defendant's rent hikes, Ms. Klossner's rent and utilities have increased from 30% to more than 50% as a share of her income. As a result, Ms. Klossner can no longer afford things like basic home repairs that would allow her to fully enjoy her dwelling. Her monthly income is constrained by whatever public benefits she is eligible to receive.

66.    The accommodation requested by Ms. Klossner, acceptance of her DHA housing voucher, was reasonable and necessary.  It would have cost nothing to Defendant and would have capped her rent obligation at 30% of her adjusted gross income, ensuring that she was no longer cost burdened.

67.    Ms. Klossner is without an adequate remedy at law and will suffer irreparable harm without a temporary restraining order or preliminary and permanent injunction to require Defendants to accept Ms. Klossner's housing choice voucher and prevent Ms. Klossner's eviction from her home.

68.    By the actions set forth above, Defendants have refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B) and 24 C.F.R. § 100.204.

69.    Defendants Impact Communities and IADU Table Mound MHP, LLC intentionally discriminated against Ms. Klossner because she is disabled in violation of 42 U.S.C. § 3604(f)(1).

70.    Defendants Impact Communities and IADU Table Mound MHP, LLC refusal to accept housing choice vouchers for pretextual reasons has a disparate impact on people with disabilities who are unable to work to make their rent payments in violation of 42 U.S.C. § 3604(f)(1).

71.    As a result of Defendants' discriminatory conduct, Ms. Klossner has suffered damages and is entitled to relief pursuant to 42 U.S.C. § 3613.

72.    Defendants' discriminatory conduct was intentional, willful, reckless, deliberately indifferent to, and/or otherwise taken in disregard for the rights of Ms. Klossner.

WHEREFORE, Plaintiff prays that this Court enter an ORDER:

    a.    Declaring the Defendants' actions violate the FHAA;

b.  Granting a temporary restraining order and a preliminary and permanent injunction enjoining Defendants to accept Plaintiff's housing choice voucher and to refrain from eviction proceedings against her during the pendency of this proceeding;

c.  Awarding Plaintiffs such damages as would fully compensate her for her injuries caused by Defendant's discriminatory housing practices;

d.  Awarding Plaintiffs her costs, expenses, and reasonable attorney's fees; and

e.  Granting any additional relief as the Court deems just and proper.

**COUNT II:       IOWA CIVIL RIGHTS ACT**

73.  The preceding paragraphs are incorporated by reference.

74.  At all relevant times Ms. Klossner was a person with a disability within the meaning of the Iowa Civil Rights Act, in that she has a physical or mental impairment which substantially limits one or more of her major life activities. Iowa Code § 216.2(5).

75.  At all relevant times, Ms. Klossner's disabilities affected her major life activities, including her ability to work.

76.  Defendants engaged in a discriminatory practice and violated Iowa Code § 216.8A(3)(c)(2) when it refused to make a reasonable accommodation to accept Plaintiff's housing choice voucher.

77.  Defendants Impact Communities and IADU Table Mound MHP, LLC intentionally discriminated against Ms. Klossner because she is disabled in violation of Iowa Code § 216.8A(3)(a).

78.  Defendants' Impact Communities and IADU Table Mound MHP, LLC refusal to accept housing choice vouchers for pretextual reasons has a disparate impact on people with disabilities who are unable to work to make their rent payments in violation of Iowa Code § 216.8A(3)(a).

16

79.  As a result of Defendants' discriminatory conduct, Ms. Klossner has suffered damages and is entitled to relief pursuant to Iowa Code § 216.17A(6).

80.  Defendants' discriminatory conduct was intentional, willful, reckless, deliberately indifferent to, and/or otherwise taken in disregard for the rights of Ms. Klossner.

WHEREFORE, Plaintiff prays that this Court enter an ORDER:

a.  Declaring the Defendants' actions violate the Iowa Civil Rights Act;

b.  Granting a temporary restraining order and a preliminary and permanent injunction enjoining Defendants to accept Plaintiff's housing choice voucher and refrain from eviction proceedings against her during the pendency of this proceeding;

c.  Awarding Plaintiff such damages as would fully compensate her for her injuries caused by Defendant's discriminatory housing practices;

d.  Awarding Plaintiff her costs, expenses, and reasonable attorney's fees; and

e.  Granting any additional relief as the Court deems just and proper.

**COUNT III:        USE OF ILLEGAL LEASE**

81.  The preceding paragraphs are incorporated by reference.

82.  Under Iowa Code § 562B.11(1), a rental agreement shall not provide that the tenant or landlord:

(1) Agree to waive or to forego rights or remedies under 562B;

(2) Agree to pay the other party's attorney fees;

(3) Agrees to the exculpation or limitation of any liability.

83.  The lease agreement Defendant IADU Table Mound MHP LLC executed with Ms. Klossner in 2017 and tendered to her in June 2019 and again in February 2020 included provisions that violated Iowa Code § 562B.11(1). Even after the

undersigned mailed Defendant IADU Table Mound MHP, LLC a letter apprising them of the illegal terms Plaintiff persisted in using a lease with these illegal provisions.

84. Ms. Klossner has suffered actual damages as a result of Defendant's persistent use of illegal lease terms.

WHEREFORE, Plaintiff respectfully requests the following relief:

    a. Awarding Plaintiff such damages as would fully compensate her for her injuries caused by Defendant's violations of Iowa Code § 562B.11;

    b. Awarding Plaintiffs her costs and expenses associated with this action; and

    c. Granting any additional relief as the Court deems just and proper.

### COUNT IV: CONSUMER FRAUD ACT (IOWA CODE CHAPTER § 714H)

85. The preceding paragraphs are incorporated by reference.

86. Iowa's Manufactured Communities or Mobile Home Parks Residential Landlord and Tenant Law provides that a landlord "<u>shall</u> provide a written explanation of utility rates, charges and services to the prospective tenant before the rental agreement is signed unless the utility charges are paid by the tenant directly to the utility company. Iowa Code § 562B.14(6) (emphasis added).

87. The law further provides that a landlord "<u>shall</u> <u>not</u> impose any conditions of rental or occupancy which restrict the tenant in the choice of a seller of fuel, furnishings, goods, services or mobile homes connected with the rental or occupancy of a mobile home space unless such condition is necessary to protect the health, safety, aesthetic value or welfare of mobile home tenants in the manufactured home community or park…If any such conditions are imposed which result in charges for such goods or

services, the charges <u>shall</u> <u>not</u> exceed the actual cost incurred in providing the tenant with such goods or services." Iowa Code § 562B.16(2) (emphasis added).

88. Upon information and belief, Defendants have failed to provide a written explanation of utility rates and charged costs in excess of the actual cost of utility service.

89. Defendants have engaged in a practice or act Defendants should reasonably know is an unfair practice, deception, fraud, false pretense, or false promise with the intent that others rely upon said unfair practice, deception, fraud, false pretense, false promise related to the lease of consumer merchandise by:

   (1)   Failing to provide a written explanation of utility rates as required by Iowa Code 562B;

   (2)   Charging more for utilities than the actual cost the Defendant has incurred to provide them;

   (3)   Coercing Ms. Klossner into signing an illegal lease and its persistent use of illegal lease terms.

90. Ms. Klossner has suffered damages as a result of Defendant's illegal conduct.

91. Defendant's conduct was a willful and wanton disregard of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests the following relief:

   a.   Declaring the Defendants' actions violate Iowa's Manufactured or Mobile Home Landlord and Tenant Law;

   b.   Awarding Plaintiffs such damages as would fully compensate her for her injuries caused by Defendant's violations of Iowa Code § 714H.3;

   c.   Treble damages pursuant to Iowa Code § 714H.5;

   d.   Awarding Plaintiff her costs, expenses, and reasonable attorney's fees; and

e.  Granting any additional relief as the Court deems just and proper.

## JURY DEMAND

92.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully

demands a trial by jury on all issues triable by a jury.

Respectfully submitted,


/s/Todd Schmidt
Todd Schmidt
Attorney for Plaintiff
IOWA LEGAL AID
799 Main Street; Suite 280
Dubuque, IA  52001-6825
TEL: (563) 588-4653
FAX: (563) 588-4656
EMAIL: tschmidt@iowalaw.org


/s/Alex Kornya
Alexander Vincent Kornya
Attorney for Plaintiff
IOWA LEGAL AID
1111 9th Street; Suite 230
Des Moines, IA 50314
TEL: (515) 243-1193
FAX: (515) 244-4618
EMAIL: akornya@iowalaw.org


/s/Thomas E. Kennedy III
Thomas E. Kennedy III (*pro hac vice* pending)
Attorney for Plaintiff
KENNEDY HUNT P.C.
906 Olive Street; Suite 200
St. Louis, MO 63101
TEL: (314) 872-9041
FAX: (314) 872-9043
EMAIL: tkennedy@kennedyhuntlaw.com


/s/Sarah Jane Hunt
Sarah Jane Hunt (*pro hac vice* pending)
Attorney for Plaintiff
KENNEDY HUNT P.C.
906 Olive Street; Suite 200
St. Louis, MO 63101
TEL: (314) 872-9041
FAX: (314) 872-9043
EMAIL: sarahjane@kennedyhuntlaw.com

21